UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
JONATHAN BATISTA,

                        Petitioner,

        -against-

S. WENDERLICH, Superintendent,

                        Respondent.
------------------------------------------------------------- x

MEMORANDUM & ORDER

14-cv-6326 (ENV)

VITALIANO, D.J.

    *Pro se* petitioner Jonathan Batista, currently incarcerated at Woodburne Correctional Facility in Woodburne, New York, is before the Court seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. *See* ECF Dkt. No. 1 ("Pet."). For the reasons set forth below, the writ is denied and his petition is dismissed.

## Background

    In May 2009, Batista was arrested and charged with two counts of robbery in the first degree, one count of grand larceny in the second degree, two counts of robbery in the second degree, and one count of assault in the second degree. The charges stemmed from the November 20, 2008 robbery of a jewelry store in Queens, during which, it was alleged, Batista and an unapprehended accomplice bound the store owner, repeatedly struck him over the head with the butt of a pistol, and made off with $340,000 worth of merchandise. *See* Transcript of Record, *People v. Batista*, Indict. No. 1784/2009 (N.Y. Sup. Ct., Queens Cty., 2014), ECF Dkt. No. 6-1, ("Tr.") at 38, 58.

    On January 31, 2011, Batista pled guilty, pursuant to a plea agreement, in Supreme Court, Queens County, to one count of robbery in the first degree (Penal Law §§ 160.15[3], 160.15[4]). *See id.* at 26-27. On February 15, 2011, petitioner was sentenced to the negotiated



1

term of ten years' incarceration and five years' post-release supervision. *See id.* at 32-36.

Despite having signed an appellate waiver as part of his deal, *see id.* at 30, Batista appealed from his sentence, *see id.* at 1-13. From a process perspective, he claimed that he had not voluntarily waived his appellate rights, and, substantively, he argued that the sentence imposed upon him was excessive, *see id.*, a matter which is committed to the sound discretion of the Appellate Division, *see* Crim. Proc. L. § 470.15; *Paul v. Ercole*, No. 07-cv-9462, 2010 WL 2899645, at *5 (S.D.N.Y. June 10, 2010), *report and recommendation adopted*, 2010 WL 2884720 (S.D.N.Y. July 21, 2010).

On February 5, 2014, the Appellate Division, Second Department found that Batista's appellate waiver was invalid and did not stand in the way of his appeal. But, then, the court unanimously affirmed the sentence now substantively before it because, it concluded, "the sentence imposed was not excessive." *People v. Batista*, 114 A.D.3d 696, 979 N.Y.S.2d 819 (2d Dep't 2014). After the New York Court of Appeals denied leave to appeal, on May 6, 2014, *see People v. Batista*, 23 N.Y.3d 960, 11 N.E.3d 717, 988 N.Y.S.2d 567 (2014), Batista timely filed the instant habeas petition in federal court, on October 27, 2014, *see* Pet.

<u>Standards Controlling Habeas Review</u>

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), the issuance of a writ of habeas corpus is prohibited with respect to any claim that was adjudicated on the merits in state court, unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law," as determined by the United States Supreme Court, or, (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference").

AEDPA's deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether it gives reasons for its determination or refers to federal law in its decision. *See Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 784-85, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. 86 at 102-03 (citation omitted). Review under AEDPA "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 491, 181 L. Ed. 2d 468 (2011) (citation omitted). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)) (other citation omitted).

Habeas corpus jurisprudence, given these ground rules, is well cabined. For the purposes of federal habeas review, "clearly established federal law" "refers to the holdings, as opposed to the dicta," of Supreme Court decisions in effect at "the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000). A state court decision is "contrary to" clearly established federal law, within the meaning of § 2254(d), if it "contradicts" relevant Supreme Court precedent or arrives at a different conclusion though based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of" the case. *Id.* at 413. In construing and applying federal law, even state court holdings that are wrongly decided in the eyes of the habeas court, if deemed reasonable,

will survive habeas review. *Id.* at 411. The state court decision need not be "so far off the mark as to suggest judicial incompetence" before habeas relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted). However, a federal court "may reverse a state court ruling only where it [is] 'so lacking in justification that there . . . [is no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington*, 562 U.S. at 103) (other citation omitted). "If this standard is difficult to meet—and it is—that is because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013) (citation and internal quotation marks omitted). Federal courts should "not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas review is the remedy." *Id.* (alteration in original) (citation omitted).

Moreover, review under § 2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). A federal court may look beyond the state court record, however, when the petitioner can demonstrate that "the adjudication of his claim based on the state-court record resulted in a decision 'contrary to' or 'involv[ing] an unreasonable application' of federal law." *Id.* at 203 n.20 (alteration in original) (citation omitted).

The door to federal habeas review has another lock. Before a federal court may consider an application for habeas corpus relief, pursuant to § 2254, the petitioner must have exhausted all of the remedies available in the state courts for every federal claim made. In order to satisfy the exhaustion requirement of the statute, a petitioner must have fairly presented to the state courts the same federal claims that are presented in the federal habeas corpus petition, and must have utilized all available mechanisms to secure review of the federal claims in state court. *See Dean v. Smith*, 753 F.2d 239, 241 (2d Cir. 1985). The constitutional claims must, therefore, have been

presented to the highest state court available to hear them. *See Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 190 & n.3, 191-92 (2d Cir. 1982).

Lastly, where, as here, the petitioner appears *pro se*, the district court "construes his habeas petition liberally and interprets it to raise the strongest arguments that it suggests." *Lugo v. United States*, No. 09-cv-696, 2014 WL 7140456, at *6 (E.D.N.Y. Dec. 12, 2014) (citing *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) & *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001)).

## Discussion

Batista asserts that he is entitled to habeas relief because the sentence imposed upon him was "excessive," Pet. at 5, and that it "amounts to cruel and unusual punishment," under the Eighth and Fourteenth Amendments to the United States Constitution, ECF Dkt. No. 8 at 2. Respondent concedes that—"arguably," at least—Batista raised a cruel-and-unusual-punishment claim as part of his excessive-sentence claim in state court and, therefore, it has been exhausted for purposes of federal habeas review. ECF Dkt. No. 7 at 6-7. Practically speaking, it matters little, since the federal claim is a nonstarter.

It is well established that "[n]o federal constitutional issue is presented where," as here, "the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord Ross v. Gavin*, 101 F.3d 687 (2d Cir. 1996). Since Batista's sentence of ten years' imprisonment and five years' post-release supervision falls squarely within the ranges prescribed by New York law, *see* Penal Law §§ 70.02[2][a],[3][a], 70.45[2], there is no basis to entertain, much less to grant, the writ on this ground.

Notably, Batista's excessive-sentence claim is the only substantive claim that he exhausted in state court and raised in this petition. *See* Tr. at 1-13, 74, 77; Pet. at 5. Clearly, it is

the only ground for relief that he has presented in this habeas proceeding, and his attendant argument about it was the only one addressed by the state in its opposition brief. *See* ECF Dkt. No. 7 at 6-7. It, of course, was the lone issue that Batista mentioned in his reply brief. *See* ECF Dkt. No. 8 at 1-2. But, consistent with the Court's obligation to construe Batista's submissions liberally and to interpret them as raising the strongest arguments that they suggest, *see Lugo*, 2014 WL 7140456, at *6, it must be noted that the petition—while certainly not a paragon of clarity—includes language that, arguably, could be read to suggest that, along with his excessive-sentence claim, he also seeks habeas relief on the separate grounds that his guilty plea was involuntary and, relatedly, that his appellate counsel was ineffective for failing to contest the validity of his plea on direct appeal.[1] Obviously, of course, just facially, these claims could not support the issuance of the writ, since they were not fairly presented and are unexhausted in state court. *See, e.g., Dean*, 753 F.2d at 241; *Daye*, 696 F.2d at 190 & n.3, 191-92.

In any event, the substance of these claims is as weak as their ripeness for habeas consideration. "The well-established standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Velasquez v. Ercole*, 878 F. Supp. 2d 387, 401 (E.D.N.Y. 2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985)). Under the Due Process Clause of the United States Constitution, a trial court may accept a guilty plea only if it is "done voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences." *Id.* (quoting *United States v. Adams*, 448 F.3d 492, 497

---

[1] The petition reads: "The conviction was obtained by a plea of guilty which was unlawfully induced or not made voluntarily with an understanding of the sentence to be imposed. . . . The sentence was excessive." Pet. at 5. Additionally, the statement of facts notes that Batista's "appellate attorney failed to challenge the validity of the plea itself." *Id.*

6

(2d Cir. 2006)). "A plea is considered intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way, and it is considered voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Id.* (quoting *Manzullo v. People of New York*, No. 07-cv-744, 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010)). A guilty plea "entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentations, or perhaps by promises that are by their nature improper." *Id.* (quoting *Morales v. United States*, No. 08-cv-3901, 2009 WL 3353064, at *5 (S.D.N.Y. Oct. 20, 2009)).

Having liberally construed Batista's arguably-stated grounds challenging the voluntariness of his plea and the effectiveness of appellate counsel in not pressing it on appeal (given the invalidity of the appellate waiver), the Court's liberal construction has reconfigured Batista's petition into one that is "mixed," that is, one that contains unexhausted as well as exhausted claims. *See Francois v. Warden of Sullivan Corr. Facility*, No. 12-cv-5333, 2014 WL 1153920, at *4 (E.D.N.Y. Mar. 19, 2014). In light of the precedents controlling substantive resolution of petitioner's unexhausted claims and the meritlessness of his exhausted claim, among the options open to a district court confronted with a "mixed petition," *see id.*, the best option here is the denial of the entire petition on the merits, *see* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Rhines v. Weber*, 544 U.S. 269, 277, 125 S. Ct. 1528, 1535, 161 L. Ed. 2d 440 (2005) ("district court would abuse its discretion if it were to grant [a habeas petitioner] a stay when his unexhausted claims are plainly meritless").

7

Skipping ahead to an elaboration of the facts underlying the unexhausted claims, the transcript of the plea proceedings unquestionably demonstrates that Batista affirmed that he had been afforded sufficient time to speak with his attorney and that no one was compelling him to plead guilty, and, moreover, that he allocuted to the elements of the crime of conviction and conceded his guilt. The transcript also shows that the trial judge informed him of the legal consequences of entering a guilty plea, which included a clear-cut explanation that, if he accepted the prosecutor's offer and pled guilty, he would "receive a sentence of ten years [of] incarceration and five years of post release supervision." Tr. at 27:16-19. That, precisely, is the sentence that was imposed.

The relevant portion of the transcript reads, in full:

> [DEFENSE COUNSEL] MR. SCHIOPPI: We have a disposition.
>
> THE COURT: He is going [to] resolve it?
>
> (The clerk of the Court swore in the defendant.)
>
> MR. SCHIOPPI: Judge, I have had an opportunity to speak to my client.
>
> THE COURT: He wants to accept the People's offer, correct?
>
> MR. SCHIOPPI: Yes, he does. I have spoken to him, and he has had an opportunity to speak to his wife. I thank the Court. He has authorized me to withdraw his previously entered plea of not guilty and he would like to plead guilty to --
>
> THE COURT: I take care of it. It is just a plea to the top count, right?
>
> [ASSISTANT DISTRICT ATTORNEY] MS. CORBETT: Yes.
>
> THE COURT: Is it correct you want to plead guilty to one count of Robbery in the First Degree to cover the charges pending against you under Indictment 1784 of 2009.
>
> THE DEFENDANT [BATISTA]: Yes.
>
> THE COURT: Is anybody forcing you to plead guilty?

THE DEFENDANT: No.

THE COURT: Have you had enough time to discuss this with your attorney?

THE DEFENDANT: Yes.

THE COURT: Do you understand that when you plead guilty you give up certain rights? You give up the right to remain silent. You give up the right to a trial where the People would have to prove you guilty beyond a reasonable doubt.

At a trial you could present a defense, call witnesses, have your lawyer cross examine the Prosecution witnesses. You could testify at a trial, and if you did not there would be no negative inferences against you. By pleading guilty you give those rights up. Is that what you wish to do?

THE DEFENDANT: Yes.

THE COURT: By pleading guilty you are admitting that acting in concert with another person on November 20th, 2008 in Queens County, you forcibly stole certain property, that being a sum of United States currency and personal property from Ozvaldo Willigan (ph) and in the course of the commission of the crime or of the immediate flight therefrom you or the person you acted in concert with used or threatened the immediate use of a dangerous instrument; is that correct?

THE DEFENDANT: Yes.

THE COURT: You understand that you are going to receive a sentence of ten years [of] incarceration and five years of post release supervision?

THE DEFENDANT: Yes.

*Id.* at 25:20-27:19.

With the statements that he made under oath, there can be no doubt that Batista knowingly and voluntarily entered his plea of guilty in exchange for the negotiated sentence that he received. The vague suggestion to the contrary in his habeas petition—that his plea was involuntary and unlawful and that his appellate counsel was ineffective for failing to raise the issue—is plainly meritless. It affords no basis for the issuance of the writ. *See, e.g., Velasquez,*

878 F. Supp. 2d at 401-04 (denying habeas petitioner's challenge to the voluntariness of his guilty plea, where the transcript of the plea colloquy showed that the trial judge had informed him of, *inter alia*, "the length of the sentence" that had been negotiated with the prosecution and which would be imposed upon him if he pled guilty, along with the rights that he would waive by pleading guilty, and where petitioner verbally indicated that he understood each); *Ferrer v. Superintendent*, 628 F. Supp. 2d 294, 303-07 (N.D.N.Y. 2008) (rejecting habeas petitioner's claim that his plea was invalid, where the transcript demonstrated, *inter alia*, that he was informed of "the details of the plea agreement into which he had entered with the District Attorney," including, specifically, "the length of the prison sentence he would receive if his guilty plea was accepted by the court," he was advised of the rights that he would forego by pleading guilty, he affirmed that he was freely and voluntarily pleading guilty, and he admitted that he was, in fact, guilty of the crime to which he had pled). The unexhausted claims, like the exhausted claim, are dismissed on the merits.

## Conclusion

In line with the foregoing, the writ of habeas corpus sought by petitioner is denied and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920-21, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to enter judgment in favor of respondent, to mail a copy of

this Memorandum and Order to petitioner, and to close this case.

So Ordered.

Dated: Brooklyn, New York
October 4, 2017

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge